UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LISA DANTES, on behalf of herself and those similarly situated, </br></br>   Plaintiff, </br></br> vs. </br></br> INDECOMM HOLDINGS, INC., d/b/a INDECOMM GLOBAL SERVICES, </br></br>   Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> CASE NO.:  1:13-CV-1290-EGB |

**MOTION TO TRANSFER OR STAY PROCEEDINGS
AND MEMORANDUM IN SUPPORT**

Defendant Indecomm Holdings, Inc., d/b/a/ Indecomm Global Services ("Indecomm") seeks an order: (i) staying this action until February 28, 2014, as Indecomm is exploring a resolution of the issues in this matter with the United States Department of Labor; or (ii) transferring this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404.

**PRELIMINARY STATEMENT**

Plaintiff purports to bring this action on behalf of herself and similarly situated underwriters employed by Indecomm seeking allegedly unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA").  Plaintiff was one of more than 300 underwriters employed by Indecomm from 2011 through 2013.  Indecomm's underwriters, including Plaintiff, largely worked remotely from their homes.

Plaintiff's claims are squarely within the scope of a preexisting investigation by the U.S. Department of Labor (the "DOL"). Indecomm is cooperating with the DOL to explore a global resolution that would include Plaintiff's claims, as well as the claims she seeks to assert on a collective basis, and could render moot the relief sought here. Accordingly, Indecomm respectfully requests that the Court order a brief stay of this case, until February 28, 2014.

If the Court does not stay the case, or if the stay is lifted, Indecomm moves for an order transferring the case pursuant to 28 U.S.C. § 1404 to the District Court for the District of New Jersey for further proceedings. While Plaintiff was located in Tennessee, she is one of only two potential class members residing there. The 300-plus remote underwriters were collectively spread among at least 30 different states.

While Tennessee has few, if any, relevant connections to this case, New Jersey is the nucleus of Plaintiff's claims. Indecomm's corporate headquarters is in New Jersey. Key decisions relating to Plaintiff and other remote underwriters were made by individuals in various states who ultimately reported to decision-makers in New Jersey. Indeed, the proper venue for overtime wage claims under the FLSA is where the defendant's corporate headquarters is located, even where plaintiffs worked or received their paychecks in different districts.

In addition, several other factors support transfer of this case. Indecomm keeps no documents in Tennessee, but does keep hard copy documents in New Jersey as well as electronic records accessible by authorized New Jersey employees. Potential Indecomm witnesses are either located in New Jersey or go there frequently in connection with their duties. Plaintiff has filed consents to join this action by five additional plaintiffs, none of whom live in Tennessee, and the potential class members are spread across the country. As a practical matter, it is likely easier for them to travel to the District of New Jersey than to this District. It would therefore be

in the interest of justice for this case to proceed in New Jersey, if it is not stayed pending the DOL investigation.

## RELEVANT BACKGROUND

Indecomm is a corporation formed under the laws of Delaware. Declaration of Rajan Nair in Support of Indecomm's Motion to Stay or Transfer This Case dated December 13, 2013 (hereinafter "Nair Decl."), ¶ 4. Indecomm's corporate headquarters is located at 379 Thornall Street, 2nd Floor, Edison, New Jersey, 08837. *Id.*

Indecomm is a leading global provider of consulting, outsourcing, learning and technology and services in a wide range of industries. Among other things, Indecomm provides mortgage consulting and services for U.S. lenders. Nair Decl., ¶ 5. In this line of business, Indecomm contracts with financial institutions to perform underwriting and related functions for mortgage applications being considered by the financial institutions. *Id.* Indecomm hires underwriters who work remotely from their homes. *Id.* Between July 2011 and July 2013, Indecomm employed more than 300 underwriters across at least 30 states. *Id.* During that same time period, Indecomm only employed seven underwriters in Tennessee including Plaintiff. Nair Decl., ¶ 6. As of July 31, 2013, Indecomm had only two active employees in Tennessee. *Id.*

Plaintiff worked for Indecomm as a remote underwriter from June 13, 2011 to October 18, 2011, primarily from her home in Jackson, Tennessee. Nair Decl., ¶ 6; D.I. 1, ¶¶ 2-3. Five additional individuals have filed notices of consent to join this lawsuit as plaintiffs. D.I. 7, 8, 10. Those individuals worked as remote underwriters from their homes in South Carolina, North Carolina, Maryland, Florida, and Washington. Nair Decl., ¶ 7.

Policy decisions relating to underwriters are made by administrative staff and supervisors located in different states but ultimately reporting to executives in New Jersey. Indecomm uses a third-party payroll administrator, but final wage decisions are made in New Jersey and paycheck

instructions are issued from that office. Nair Decl., ¶ 11. No decisions relating to policies, wages, performance or any other aspect of employment are made in Tennessee as Indecomm has no office and no management or administrative personnel there. Nair Decl., ¶ 9. Work is assigned directly from Indecomm's clients, which is then allocated to individual employees through Indecomm's internal system and Project Managers who also work remotely in a number of states. Nair Decl., ¶ 7.

Indecomm does not maintain any documents in Tennessee, and key documents related to Plaintiff's claims in this case are kept in New Jersey or in electronic files that can only be accessed by authorized employees, all of whom are located outside of Tennessee. Nair Decl., ¶ 11. In addition, several key witnesses in this case reside in New Jersey or other states outside of Tennessee. Nair Decl., ¶ 10.

The DOL is investigating the very issues in this case with respect to Indecomm's compensation of underwriters, as well as employees who worked for Indecomm as auditors and condition specialists. Nair Decl., ¶ 2. Indecomm is working with the DOL and is engaged in discussions to explore a global resolution of the issues for all employees. *Id.*

Indecomm has entered into an agreement with Plaintiff's counsel that tolls the statute of limitations for the Plaintiff and any employees that could potentially opt-in to this action, so a brief stay will not prejudice Plaintiff or potential additional plaintiffs. Nair Decl., ¶ 2.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE DEPARTMENT OF LABOR INVESTIGATION

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). This includes

4

the power to stay a case where "independent proceedings . . . bear upon the case", regardless of "whether the separate proceedings are judicial, administrative, or arbitral in character." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). It is entirely appropriate for a court to issue a stay where resolution of the parallel proceeding could moot the claims before it. *See, e.g., A. Esteban & Co., Inc. v. Metro. Transp. Auth.*, No. 02 Civ. 3615, 2003 WL 57003, at *2 n.2 (S.D.N.Y. Jan. 6, 2003) (stay was warranted where resolution of agency proceeding could "moot or significantly alter the case"); *Ka'aina v. Kaua'i Island Util. Co-op.*, No. CIV 10-00169, 2010 WL 3834999, at *8 n.3 (D. Haw. Sept. 24, 2010) (noting that the possibility that regulatory proceedings may render the case moot warranted a stay); *Yoshioka v. Charles Schwab Corp.*, No. C-11-1625 EMC, 2011 WL 6748984, at *14 (N.D. Cal. Dec. 22, 2011) (staying case "pending further action by the Department of Labor or the IRS that might resolve this matter without the parties incurring unnecessary costs").

Here, the DOL is investigating the same issue that forms the basis for Plaintiff's claim in this case: Indecomm's overtime compensation of underwriters. If Indecomm reaches a settlement with the DOL, that settlement will be available for any potential opt-in class members. In addition, the DOL investigation could lead to a resolution for more employees than are able to participate in this case. Numerous underwriters are bound by arbitration agreements requiring them to arbitrate the dispute. Indeed, counsel for Plaintiff has initiated 18 arbitrations. Nair Decl., ¶ 3.

Plaintiff does not allege any state law claims or other claims that would need to proceed in the event of a DOL settlement. Rather, the sole claim asserted by Plaintiff could be entirely moot if a settlement is reached. Accordingly, a brief stay of the proceedings through

February 28, 2014 will allow time for the investigation to progress further, and possibly conclude, thereby promoting judicial efficiency and economy.

Conversely, if this proceeding is allowed to go forward and a global resolution is ultimately reached with the DOL, Indecomm will face significant hardship and unnecessary expense. *See Stender v. Cardwell*, Civ. Act. No. 07–cv–02503, 2008 WL 544924 (D. Colo. Feb. 27, 2008). Plaintiff cannot point to any way in which the brief stay requested by Indecomm would be prejudicial, particularly because any potential statute of limitations are preserved by the parties' existing tolling agreement. Nair Decl., ¶ 2.

Accordingly, Indecomm requests that this Court stay these proceedings until February 28, 2014.

## II. IF THIS ACTION PROCEEDS, IT SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404

If the Court does not stay the case pending the DOL investigation and settlement discussions, then it should transfer the case to the United States District Court for the District of New Jersey.

Pursuant to 28 U.S.C. § 1404, the Court can transfer this action to any other district where it might have been brought, for the convenience of parties and witnesses and in the interest of justice. The purpose of § 1404 is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). The Court can consider several factors in determining whether to transfer a case pursuant to this section:

> When ruling on a motion under § 1404(a), 'a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' . . . Factors relevant to the convenience of the parties include: (1) the

6

> location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; and (5) the plaintiff's choice of forum.

*Sovik v. Ducks Unlimited, Inc.*, No. 3:11-cv-0018, 2011 WL 1397970, at *5 (M.D. Tenn. Apr. 13, 2011) (citation omitted). There is no question that New Jersey is a district where Plaintiff could have brought this case, and the relevant factors weigh strongly in favor of transferring the case to the District Court for the District of New Jersey.

### A. Plaintiff's FLSA Claims Should Have Been Brought In New Jersey, Where All Material Events Giving Rise to the Claims Occurred

Because the FLSA does not contain a venue provision, venue in this case is governed by the general venue statute for federal courts, 28 U.S.C. § 1391(b). *See, e.g., Tahir v. Avis Budget Grp., Inc.*, No. CIV. A. 09-3495, 2009 WL 4911941, at *2 (D.N.J. Dec. 14, 2009). That section provides:

> A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, both venue and jurisdiction lie in the District of New Jersey. *See* 28 U.S.C. §§ 1331, 1391(b).

Indecomm is a Delaware corporation with its headquarters and principal place of business in New Jersey. Nair Decl., ¶ 4; 28 U.S.C. § 1391(b)(1). In addition, a "substantial part of the events or omissions giving rise to the claim occurred" in New Jersey, not Tennessee. 28 U.S.C. § 1391(b)(2); *see Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)

("Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute").

For overtime compensation claims brought pursuant to the FLSA, courts have held that proper venue lies in the district where defendant's corporate headquarters is located. For example, in *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 81 (D.D.C. 2009), the plaintiffs alleged that their former employer SASSI, a Virginia company that installed electronics and sight and sound systems in the Washington, D.C. metropolitan area, had violated the FLSA by failing to pay overtime compensation. SASSI moved to dismiss based on improper venue, or to transfer venue to Virginia, where SASSI's principal place of business was located. The court held, *inter alia*, that plaintiffs did not demonstrate "that their claims for unpaid wages arise out of SASSI's business transactions or contracts formed in the District of Columbia." *Id.* at 84. The *Shay* court focused on the fact that SASSI made all substantive decisions regarding wages in its Virginia office:

> [W]here claims arise from a plaintiff "being owed compensation from ... employment," all of the events giving rise to the litigation occur where "all computation and processing of payments owed to the plaintiff occurred." *See Smith v. U.S. Investigations Servs.*, Inc., Civil Action No. 04-0711(RMU), 2004 WL 2663143, at *3 (D.D.C. Nov. 18, 2004). The defendants aver that they make all substantive decisions related to wage payments and termination and compute and process all wage payments in Virginia. . . . Because the claims here center around the defendants' alleged failure to compensate the plaintiffs for prior employment, a substantial portion of the events giving rise to the litigation occurred in Virginia where the wage payments were computed and processed. Thus, venue is improper in the District of Columbia under § 1391(b)(2).

*Id.* at 85. Although it could have dismissed the case, the *Shay* court found that it was in the interests of justice to transfer the case to Virginia. *Id.*

8

Similarly, in *Wood v. Dunn*, No. 1:10-cv-00092, 2010 WL 3259746 (W.D. Ky. Aug. 17, 2010), the plaintiff claimed violations of the FLSA, including for failure to pay overtime wages. The plaintiff argued that venue was proper in Kentucky because he was hired in Kentucky, the defendants were allegedly "aware he intended to permanently reside in Kentucky during his employment", and he received his pay and W-2 forms in Kentucky. *Id.* at *2. The defendants were located in Mississippi, and pay decisions were made in Mississippi. *Id.* at *1-2. The *Wood* court rejected the plaintiff's argument that the relevant location for FLSA venue is where payment was received, noting the lack of authority for the argument. Rather, venue was improper in Kentucky, and proper in Mississippi, because defendants "made all substantive decisions related to wage payments and computed and processed all wage payments in Mississippi." *Id.*

The District of New Jersey applied a similar analysis in *Tahir v. Avis Budget Grp., Inc.*,. Avis sought to transfer the case to Virginia, where the employee plaintiff worked, even though Avis corporate headquarters was in New Jersey. The court held:

> Although hours worked by Plaintiff and the nature of the duties he discharged are central to his claims and clearly focus on occurrences at his Dulles, Virginia workplace, Plaintiff has alleged a corporate policy and practice of misclassifying employees such as himself as exempt from FLSA and thus denying them appropriate hourly compensation, including overtime pay. Whether Plaintiff was properly classified as exempt of course relates to his job duties, but given that the Complaint brings under scrutiny the employer's 'policy and practice' of misclassification and denial of pay as required by FLSA, the Court cannot conclude that the district in which the employer's corporate headquarters is located is not a district in which a substantial part of the events giving rise to Plaintiff's claims occurred.

*Tahir*, 2009 WL 4911941 at *3. Because New Jersey was a proper venue, the court denied transfer.

Here, Plaintiff seeks to pursue a collective action on behalf of hundreds of underwriters located across the country, and claims that Indecomm failed to pay overtime wages. Decisions relating to work assignment, workload policies, procedures, classification, and compensation for remote underwriters are made by personnel in various states who ultimately report to executives in New Jersey. While Indecomm uses a third-party payroll administrator located in Georgia, the paychecks, and all instructions regarding those paychecks, issue out of Indecomm's New Jersey headquarters. Nair Decl., ¶¶ 9, 11.

As in the cases above, Indecomm's headquarters is therefore a location where a substantial part of the events giving rise to the claims occurred, both for Plaintiff and any potential opt-in plaintiffs. Plaintiff could have – and indeed should have – brought this case in New Jersey.

### B.      Plaintiff's Choice of Forum Should Be Given Little Weight

Tennessee has little connection to the claims in this case. The Plaintiff concedes that her work was directed outside of Tennessee, alleging that she had "daily and routine phone calls which travelled outside the state of Tennessee as well as e-mail and internet use which transacted business outside the state of Tennessee." D.I. 1, ¶ 12. That alone renders Plaintiff's choice of forum less determinative than in the typical transfer analysis.

In addition, Plaintiff is seeking to bring a collective action on behalf of hundreds of people located outside of Tennessee. Indeed, five other underwriters residing in South Carolina, North Carolina, Maryland, Florida, and Washington have filed consents to join, and the potential plaintiffs are located across at least 30 different states. D.I. 7, 8, 10; Nair Decl., ¶¶ 5, 7. Plaintiff's choice of forum should be given less weight for this reason alone. *See Andrews v. A.C. Roman & Associates, Inc.*, 914 F. Supp. 2d 230, 238 (N.D.N.Y. 2012).

Given the tenuous connection of Tennessee to the issues in the case and the collective nature of the action, Plaintiff's choice of forum should receive less deference and, in any event, cannot outweigh the numerous factors favoring transfer to New Jersey.

### C.  Convenience of the Witnesses and Parties Weighs In Favor Of Transfer

Plaintiff seeks to recover overtime compensation and damages "for all underwriters who were/are similarly situated to Plaintiff." D.I. 1, ¶ 7. While Plaintiff is located in Tennessee, the potential plaintiffs in this FLSA collective action are located across the country. Nair Decl., ¶ 5. Indeed, of the additional plaintiffs who have opted in since the Complaint was filed, none worked in Tennessee. They worked from their homes in South Carolina, North Carolina, Maryland, Florida, and Washington. D.I. 7, 8; Nair Decl., ¶ 7. Plaintiff also included affidavits from 10 additional employees with its motion for conditional certification of the class, none of whom worked in Tennessee. D.I. 4.

New Jersey is unquestionably more convenient for Indecomm, which maintains its headquarters in New Jersey. Key Indecomm witnesses in this case reside in New Jersey, including Rajan Nair, President, Financial Services and Balaji Venkatachalam, Chief Financial Officer. Nair Decl., ¶ 10. Other potential Indecomm witnesses work in other states, but these witnesses routinely travel to New Jersey as part of their jobs. *Id.*

As the court noted in *Andrews*, when combined with the diminished deference to Plaintiff's choice of forum, the location of employer witnesses in another district supports transfer:

> [B]ecause of the potential disruption of Roman & Associates' business posed by the number of employee-witnesses that would be called upon to testify at trial, this factor weighs slightly in favor of transfer to the Eastern District. When combined with the diminished deference afforded Plaintiffs' choice of forum if the matter is certified as a collective action or deemed a class action, the Court finds that this factor weighs in favor of transfer.

*Andrews*, 914 F. Supp. 2d at 240; *see also In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) (noting that "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court" is longer).

As a practical matter, New Jersey is likely also easier to reach from many parts of the country, and it is the one location common to all potential plaintiff's claims. Given the geographic spread of the parties and potential parties – including Plaintiff, the additional plaintiffs that have opted-in, those who submitted affidavits, and the remaining potential class members – convenience of the parties and witnesses favors a transfer to New Jersey.

### D. Relevant Documents Are Located in New Jersey

Indecomm does not keep any documents in Tennessee. Nair Decl., ¶ 11. While payroll records and personnel files are maintained electronically, they can only be accessed by authorized personnel that are generally located in New Jersey. *Id.* Indecomm also keeps hard copy files in New Jersey. Accordingly, this factor supports transfer to New Jersey.

### E. Transfer Will Promote Judicial Efficiency

It will be more efficient for the District of New Jersey to decide this case given its proximity to potential witnesses, likely including any witnesses that need to be subpoenaed, the fact that New Jersey is relatively more accessible for potential plaintiffs than Jackson, Tennessee, and the fact that events giving rise to the Plaintiff's claims occurred in New Jersey. Accordingly, based on the above, this case should be transferred to New Jersey.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, the Court should enter an Order staying this action, or alternatively transferring this action to District Court for the District of New Jersey, and granting such further relief as the Court deems just and proper.

Dated: December 13, 2013    Respectfully submitted,

               BURCH, PORTER & JOHNSON, PLLC

               /s/ Lisa A. Krupicka
               Lisa A. Krupicka, Esq. (BPR #12147)
               130 North Court Avenue
               Memphis, TN 38103
               Telephone: (901) 524-5000
               Facsimile: (901) 524-5024
               Email: lkrupicka@bpjlaw.com
                and

               KELLEY DRYE & WARREN LLP
               William A. Escobar, Esq.*
               Barbary E. Hoey, Esq.*
               Melissa E. Byroade, Esq.*
               101 Park Avenue
               New York, NY  10178
               Telephone:  (212) 808-7800
               Facsimile:  (212) 808-7897
               Attorneys for Defendant Indecomm Holdings, Inc.
               *Applications for admission *pro hac vice* forthcoming

## **CERTIFICATE OF CONSULTATION**

   Pursuant to Local Rule 7.2, William Escobar and Barbara Hoey, counsel for Indecomm, conferred with Plaintiff's counsel Ryan Morgan regarding the relief sought in this motion. The consultation took place by phone on December 9, 2013. On December 11, 2013, Plaintiff's counsel informed Indecomm's counsel that Plaintiff does not consent to a stay of the proceedings or transfer to New Jersey.

               /s/ Lisa A. Krupicka

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded via the Court's electronic filing system this 13th day of December, 2013 to:

    C. Ryan Morgan, Esq.
    Morgan & Morgan, P.A.
    20 N. Orange Ave., 14th Floor
    P. O. Box 4979
    Orlando, FL  32802-4979


            s/ Lisa A. Krupicka